125 F.3d 965
 James BEAMON; Charles Boyd; Cecil Holbrook, on behalf of
themselves and all other similarly situated
persons, Plaintiffs-Appellants,
v.
Jesse BROWN, in his official capacity as Secretary,
Defendant-Appellee.
 No. 96-3923.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 7, 1997.
Decided Sept. 18, 1997.
 
 Michael J. Mooney, Barbara J. Cook (argued and briefed), Cincinnati, Ohio, for Plaintiffs-Appellants.
 Barbara C. Biddle (briefed), Department of Justice Appellate Staff, Civil Division, Sandra Wien Simon (argued and briefed), U.S. Department of Justice, Appellate Staff, Civil Division, Washington, DC, for Defendant-Appellee.
 Before: LIVELY, KENNEDY, and NORRIS, Circuit Judges.
 KENNEDY, Circuit Judge.
 
 OPINION
 
 1
 Plaintiffs-Appellants, James Beamon, Charles Boyd, and Cecil Holbrook, on behalf of themselves and all other similarly situated persons, appeal the District Court's order granting the motion of defendant-appellee, Jesse Brown, in his official capacity as Secretary, United States Department of Veterans Affairs, to dismiss plaintiffs' claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, we AFFIRM.
 
 I. Facts
 
 2
 Plaintiffs, honorably discharged wartime veterans, have brought this action, on behalf of themselves and seeking to represent a class of similarly situated veterans, to challenge the manner in which the Department of Veterans Affairs ("VA") processes claims for veterans' benefits. Each of the plaintiffs has applied for benefits from the VA and has experienced delays in receiving final decisions. Mr. Beamon applied for benefits in 1989 and waited seven years before receiving a favorable decision granting him pension benefits. He received those benefits after the District Court dismissed plaintiffs' claims, but at the time this appeal was filed he still had not received a final decision on his claim for service-related disability benefits. In 1988, Mr. Boyd filed a claim for refund of withheld funds. At the time this complaint was filed with the District Court in August of 1995, he had yet to receive a final decision from the VA. He subsequently received $8700 from the VA. At the time this appeal was filed, Boyd believed that he was owed $9000, not the $8700 he received, and was not sure whether he agreed with the amount of the VA's refund. Mr. Holbrook filed for service related disability benefits in 1992 and at the time this appeal was filed had not yet received a final decision from the VA.
 
 
 3
 Plaintiffs assert that the VA's procedures for processing claims cause unreasonable delays, thereby violating their rights under the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b); under § 302 of the Veterans' Benefits Improvement Act of 1994 ("VBIA"), 38 U.S.C. § 5101 (Supp.1995) (note); and under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. On August 2, 1995, plaintiffs filed this complaint in the United States District Court for the Northern District of Ohio. They sought the following relief: a declaratory judgment finding the VA to be in violation of the law; injunctive relief compelling the VA to develop and implement standards and procedures for the timely handling of claims filed with the Cleveland Regional Office of the VA or with the Board of Veterans' Appeals ("BVA"); and injunctive relief ordering the VA to develop and implement standards and procedures for the timely handling of claims remanded from the BVA to the Cleveland Regional Office. Plaintiffs continued to pursue their individual benefit claims through the VA's administrative appeal system, and claim that their action in the District Court challenged only the procedures that the VA employs, not any of its substantive decisions. On August 2, 1995, plaintiffs also filed a motion for class certification. On July 16, 1996 the District Court entered its order granting defendant's motion to dismiss. The District Court did not rule on the motion for class certification. This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 II. Discussion
 A. Standard of Review
 
 4
 We review a district court ruling granting a motion to dismiss de novo. See, e.g., Hiser v. City of Bowling Green, 42 F.3d 382, 383 (6th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); Friends of Crystal River v. United States Environmental Protection Agency, 35 F.3d 1073, 1077-78 (6th Cir.1994).
 
 B. The APA Waiver of Sovereign Immunity
 
 5
 The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit. United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1325 (6th Cir.1993) (citing United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983)). Such a waiver of sovereign immunity " 'must be clear, express, and unambiguous.' " Id. (quoting Ohio v. United States Dep't of Energy, 904 F.2d 1058, 1059 (6th Cir.1990), rev'd on other grounds, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992)). In this case, plaintiffs argue that the APA provides the necessary waiver of sovereign immunity.
 
 
 6
 Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702,[1] the waiver is limited by two exceptions that are relevant to this case. First, § 701(a)(1) provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Second, under the APA, a federal district court may only review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, the APA does not express the U.S. government's consent to suit if an alternate adequate remedy is available to review a final agency action.
 
 
 7
 C. The Court of Veterans Appeals as an Alternate Adequate Remedy
 
 
 8
 In 1988, Congress enacted the Veterans Judicial Review Act of 1988, Pub.L. No. 100-687, Tit. III, 102 Stat. 4105, 4113-4122 (codified in sections scattered in 38 U.S.C.) ("VJRA"), and established a multi-tiered framework for the adjudication of claims regarding veterans benefits. The process begins when a claimant files for benefits with a regional office of the Department of Veterans Affairs. The regional office of the VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Upon receiving a decision from the regional office, the claimant may appeal to the BVA, which either issues the final decision of the Secretary or remands the claim to the regional office for further development and subsequent appeal. See 38 U.S.C. § 7104. The Court of Veterans Appeals ("CVA"), an Article I court established by Congress in the VJRA, has exclusive jurisdiction over appeals from the final decisions by the BVA. 38 U.S.C. § 7252(a). The Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over decisions of the CVA. 38 U.S.C. § 7292. If necessary, a claimant may petition the United States Supreme Court to review the decision of the Court of Appeals for the Federal Circuit. See 38 U.S.C. § 7291.
 
 
 9
 The District Court concluded that this system of judicial review provides plaintiffs with an alternate adequate remedy. The court specifically found that Congress gave the CVA two sources of power with which it can remedy claims of unreasonable administrative delay or inaction. First, the All Writs Act empowers "[t]he Supreme Court and all courts established by Act of Congress to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Second, Congress specifically empowered the CVA to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2). With either of these powers, the Court concluded, "the CVA has power ... to remedy adequately the unreasonable delay alleged by the plaintiffs." Joint Appendix at 37. Because the court found that the CVA provided plaintiffs with an adequate alternative remedy, it concluded that plaintiffs' claims fell within § 704's exception to the APA's waiver of sovereign immunity. The court recognized that without a waiver of sovereign immunity it lacked subject matter jurisdiction in this case.
 
 
 10
 Plaintiffs acknowledge that this system provides adequate remedies for individuals claiming VA inaction or unreasonably delayed benefits decisions. Plaintiffs argue, however, that the CVA would provide an inadequate remedy for their claims. In particular, plaintiffs allege that the CVA, an appellate court, does not have the power to conduct discovery, issue declaratory judgments, certify class actions, or issue injunctive relief that would address constitutional deficiencies in the VA's procedures. These powers, plaintiffs argue, are all necessary to provide an adequate remedy for their claims, which seek review of VA procedures not prompt decisions on their individual claims under the current process. They assert, therefore, that the APA's waiver of sovereign immunity, codified at 5 U.S.C. § 702, applies to their claims.
 
 
 11
 Plaintiffs argue that Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), supports their assertion that as a court of limited jurisdiction the CVA would be unable to provide an adequate remedy. In Bowen, the Supreme Court held that the Federal Court of Claims, with only the power to award monetary relief, was an inadequate forum for the resolution of disputes surrounding "the rather complex ongoing relationship between" the Commonwealth of Massachusetts and the United States Department of Health and Human Services. 487 U.S. at 905, 108 S.Ct. at 2738. The Court decided that the Court of Claims lacked the "general equitable powers" necessary to provide an adequate remedy in that case. Id. Contrary to plaintiffs' assertion, the Bowen decision does not "show[ ] strong hostility to arguments that courts other than Article III district courts, with their broad equitable powers, can provide adequate remedies for § 704 purposes." Plaintiffs-Appellants Brief at 16. Bowen merely stands for the proposition that sometimes Article I courts will not be vested with the powers necessary to provide adequate relief in the judicial review of agency action. If the administrative review process lacks "the kind of special and adequate review procedure" required to provide adequate relief, sovereign immunity is not waived under the APA. 487 U.S. at 904, 108 S.Ct. at 2737.
 
 
 12
 In the present case, however, the CVA has the power to provide adequate relief for the plaintiffs. As the District Court concluded, the CVA can "compel action of the Secretary unlawfully withheld or unreasonably delayed," 38 U.S.C. § 7261(a)(2), or it can provide "writs necessary or appropriate in the aid of their respective jurisdictions," under the All Writs Act, 28 U.S.C. § 1651(a). Taken together, these statutory grants of equitable power supply the CVA with the "kind of special and adequate review procedures," Bowen, 487 U.S. at 904, 108 S.Ct. at 2737, that enable it to remedy unreasonable delays by the VA, and make it an adequate forum for plaintiffs' claims.
 
 
 13
 The CVA itself has recognized repeatedly that § 7621(a)(2) and the All Writs Act provide it with the authority to issue orders compelling the VA to act and to issue extraordinary writs when it appears that agency inaction would frustrate its appellate jurisdiction. See, e.g., Friscia v. Brown, 8 Vet.App. 90, 91 (1995); Ebert v. Brown, 4 Vet.App. 434, 437 (1993); Erspamer v. Derwinski, 1 Vet.App. 3, 7-8 (1990).
 
 
 14
 Plaintiffs contend that their claims are different because they seek constitutional review of agency procedures and wish to group their claims in a class action. Thus, they argue, merely compelling the VA to issue a final decision on individual benefits would not provide an adequate remedy. Contrary to plaintiffs' arguments, there is no reason to believe that this system cannot provide for the adequate adjudication of their constitutional challenges to the process by which the VA decides its benefits decisions. The CVA has the power of mandamus with which it can remedy individuals' claims alleging delay, and there is no reason why the CVA could not consider challenges to VA procedures during the adjudication of individual claims contesting delayed benefits decisions.
 
 
 15
 Existing case law supports our conclusion that the CVA can provide plaintiffs with an adequate remedy. In Dacoron v. Brown, 4 Vet.App. 115 (1993), for example, while declining to issue a writ, the CVA acknowledged and described its capacity to review constitutional challenges:
 
 
 16
 Claims come to this Court on appeal from determinations of the BVA for the VA Secretary ... under laws pertaining to the provision of benefits by the VA Secretary. Therefore, constitutional challenges will ordinarily be presented to this Court only in the context of a proper and timely appeal taken from such decision made by the VA Secretary through the BVA. Although this Court also has authority to reach constitutional issues in considering extraordinary writs under 28 U.S.C. § 1651(a), the Court may ... exercise such authority only when the claimant has demonstrated that he or she has no adequate alternative means of obtaining the relief sought and is clearly and indisputably entitled to such relief.
 
 
 17
 4 Vet.App. at 119. Within this system, the BVA has the initial responsibility to hear and decide plaintiffs' claims, including the constitutional issues that they raise. When the BVA issues a final decision, it may be appealed to the CVA. If the BVA unreasonably delays consideration of plaintiffs' claims, the CVA has equitable power under § 7621(a)(2) to compel the VA to issue a final decision, or could itself "reach constitutional issues in considering petitions for relief under 28 U.S.C. § 1651(a)." 4 Vet.App. at 119. Beyond that, the Federal Circuit has jurisdiction over review of constitutional issues decided by the CVA. See 38 U.S.C. § 7292(d)(1);[2] see also Albun v. Brown, 9 F.3d 1528, 1530 (Fed.Cir.1993) (recognizing that jurisdiction of the Court of Appeals for the Federal Circuit includes appeals that raise constitutional issues); Machado v. Derwinski, 928 F.2d 389, 391 (Fed.Cir.1991) (deciding that BVA did not deny veteran his constitutional rights to due process by failing to notify him of his right to appeal). There is no reason why this system cannot adjudicate plaintiffs' challenges to the procedures used by the VA along with plaintiffs' claims for individual benefits.
 
 
 18
 It is true that the VJRA system does not allow the CVA to review veterans' claims asserted as class actions. Lefkowitz v. Derwinski, 1 Vet.App. 439, 440 (1991). Plaintiffs, however, seem to misunderstand the nature of the class action device. The class action, a tool for the aggregation of claims, is merely "a convenient procedural device" that helps "reduce or eliminate a multiplicity of suits." 3B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE p 23.02 (2d ed.1980). Although the Federal Rules of Civil Procedure make class actions available to some plaintiffs in United States district courts, the rules themselves do not confer those courts with jurisdiction over claims that they could not hear if brought individually. See FED.R.CIV.P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts...."). The VJRA system is not an inadequate alternative forum because it does not operate with the same body of procedural tools that govern federal district courts and does not allow individual claimants to aggregate their claims as a class action. Plaintiffs may bring their claims individually, and the CVA's decisions of individual claims will have a binding effect on the manner in which the VA processes subsequent veterans' claims. See Lefkowitz, 1 Vet.App. at 440. Congress created a multi-tiered judicial review process that provides plaintiffs with adequate remedies. Therefore, we affirm the District Court's decision that it lacked subject matter jurisdiction over plaintiffs' claims because they fell within the § 704 exception to the APA's waiver of sovereign immunity.
 
 
 19
 D. Preclusion of Judicial Review under 38 U.S.C. § 511
 
 
 20
 The District Court considered, but did not decide, whether the VJRA actually precludes federal district court jurisdiction over plaintiffs' claims. Under 5 U.S.C. § 701(a)(1), the APA does not waive sovereign immunity when statutes preclude judicial review. When Congress established the CVA through the VJRA in 1988, it added to an already long history of legislation providing for veterans benefits. Both the text of the statute and this extensive legislative history express Congressional intent to construct an exclusive source of review for veterans benefits claims. We conclude that the VJRA's statutory review process vests exclusive jurisdiction over plaintiffs' claims with the CVA, thereby depriving the District Court of subject matter jurisdiction pursuant to 5 U.S.C. § 701(a)(1).
 
 
 21
 The text of § 511 expresses Congressional intent to provide limited and exclusive channels for the review of VA decisions, by providing that:
 
 
 22
 (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action of mandamus or otherwise.
 
 
 23
 (b) The second sentence in subsection (a) does not apply to--
 
 
 24
 (1) matters subject to section 502 of this title;
 
 
 25
 (2) matters covered by sections 1795 and 1984 of this title;
 
 
 26
 (3) matters arising under chapter 37 of this title; and
 
 
 27
 (4) matters covered by chapter 72 of this title.
 
 
 28
 38 U.S.C. § 511 (1991). This section creates a broad preclusion of judicial review of VA decisions. The Secretary, acting through the BVA, "shall decide all questions of law and fact necessary to a decision by the secretary under a law that affects the provisions of benefits." § 511(a). Plaintiffs asked the district court to review the legality and constitutionality of the procedures that the VA uses to decide benefits claims. Such a challenge raises questions of law and fact regarding the appropriate methods for the adjudication of veterans' claims for benefits. Determining the proper procedures for claim adjudication is a necessary precursor to deciding veterans benefits claims. Under § 511(a), the VA Secretary shall decide this type of question.
 
 
 29
 Subject only to four exceptions, VJRA precludes judicial review of the Secretary's decisions. The fourth exception, "matters covered by chapter 72," is relevant to the case at hand. Chapter 72 of the VJRA established the CVA, created its judicial review procedures, and defined its jurisdiction. Under § 7252(a), the CVA has exclusive jurisdiction over appeals from final decisions by the BVA. 38 U.S.C. § 7252(a). Plaintiffs in this case allege that VA procedures cause unreasonable delays in benefits decisions. To adjudicate this claim, the District Court would need to review individual claims for veterans benefits, the manner in which they were processed, and the decisions rendered by the regional office of the VA and the BVA. This type of review falls within the exclusive jurisdiction of the CVA as defined by § 7252(a). As discussed above, the CVA also has equitable powers to aid its exercise of jurisdiction. It can "compel action of the Secretary unlawfully withheld or unreasonably delayed," under § 7261(a)(2), and can issue extraordinary writs pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Thus along with conferring the CVA with exclusive jurisdiction to review decisions of the BVA, Congress provided it with the power to remedy claims that decisions have been unreasonably or unlawfully delayed.
 
 
 30
 At least one district court has also recognized that the CVA has exclusive jurisdiction over claims alleging administrative delays by the VA. In Helfgott v. United States, 891 F.Supp. 327 (S.D.Miss.1994), the United States District Court for the Southern District of Mississippi decided that it lacked jurisdiction over a veteran's challenge to a VA decision to suspend issuance of all benefits until the validity of a particular regulation had been decided. The court determined that Congress had removed its jurisdiction over a challenge seeking to compel the VA to issue a benefit decision:
 
 
 31
 By lodging review of agency action, including 'action of the Secretary unlawfully withheld or unreasonably delayed,' (§ 7261(a)(2)) in the CVA, Congress has manifested a clear intent that the CVA exercise sole jurisdiction over review of all benefits determinations, including actions seeking to compel the VA to make a decision.
 
 
 32
 Id. 891 F.Supp. at 330.
 
 
 33
 In addition, Congress explicitly granted the Court of Appeals for the Federal Circuit the "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). In 38 U.S.C. § 7292(d)(1), Congress reemphasized that
 
 
 34
 [t]he Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions .... [and] ... shall hold unlawful any regulation or interpretation thereof (other than determination as to a factual matter) that was relied upon in the decision of the Court of Veterans Appeals that the Court of Appeals for the Federal Circuit finds to be ... contrary to constitutional right, power, privilege, or immunity.
 
 
 35
 Id. In sum, the VJRA explicitly granted comprehensive and exclusive jurisdiction to the CVA and the Federal Circuit over claims seeking review of VA decisions that relate to benefits decisions under § 511(a). This jurisdiction includes constitutional issues and allegations that a VA decision has been unreasonably delayed.
 
 
 36
 The history of veterans' benefits legislation reinforces our conclusion that Congress intended to vest the CVA with exclusive jurisdiction over constitutional challenges to VA decisions. Before it was amended in 1988, 38 U.S.C. § 211(a), the predecessor to § 511(a), attempted to bar district court review of all VA decisions.[3] Because Congress had not yet established the CVA with its jurisdiction to review VA decisions relating to benefits, § 211(a) might have been interpreted as a complete bar to the judicial review of all challenges to such decisions. Wary of the constitutional danger of precluding judicial review of constitutional claims, the Supreme Court decided in Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), that § 211(a) precluded review of decisions made by the VA Administrator, but did not preclude district court jurisdiction over constitutional challenges to acts of Congress relating to veterans benefits. Id. at 367, 94 S.Ct. at 1165-66. In Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), the Court extended this doctrine further, holding that § 211(a) did not prevent a district court from reviewing whether a VA regulation violated the Rehabilitation Act, a statute that did not directly relate to veterans benefits. Id. at 545, 108 S.Ct. at 1380. The general rule, however, was that there was no judicial review of VA decisions. See Sugrue v. Derwinski, 26 F.3d 8, 12-13 (2d Cir.1994) ("Congress has accorded frequent attention to the issue of judicial review of VA benefits determinations, and only in 1988 did it provide a limited form of review when it established the United States Court of Veterans Appeals ...."), cert. denied sub nom. Sugrue v. Brown, 515 U.S. 1102, 115 S.Ct. 2245, 132 L.Ed.2d 254 (1995).
 
 
 37
 In 1988, Congress established the CVA and vested it with authority to review VA decisions under laws relating to benefits claims, including the power to resolve constitutional issues, dramatically altering the statutory landscape. Legislative materials indicate that, in enacting the VJRA, Congress intended to create an opportunity for veterans to challenge VA benefits decisions, but also to assign exclusive jurisdiction over their claims to a centralized system comprised of the BVA, the newly established CVA, and the Federal Circuit. As House Report Number 100-963 explained, "[t]he Court of Veterans Appeals would have exclusive jurisdiction to consider all questions involving benefits under laws administered by the VA. This would include factual, legal, and constitutional questions." H.R.Rep. No. 100-963 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5786. The report also explained that in creating the CVA, Congress "intended to provide a more independent review by a body which is not bound by the Administrator's view of the law, and that will be more clearly perceived as one which has as its sole function deciding claims in accordance with the Constitution and laws of the United States." Id. at 5808. Congress enacted the CVA to provide claimants with an avenue for the review of VA decisions that would otherwise have been unreviewable.
 
 
 38
 Since Congress established the CVA and enacted the revised § 511(a), federal courts have held repeatedly that they lack jurisdiction over constitutional challenges to VA benefits decisions. In Zuspann v. Brown, 60 F.3d 1156 (5th Cir.1995), cert. denied, 516 U.S. 1111, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996), a veteran filed a suit in federal court against the Secretary of the Department of Veterans Affairs, alleging that he was denied adequate medical treatment in violation of the Due Process Clause of the Fifth Amendment. The Fifth Circuit affirmed the district court's decision that it lacked jurisdiction, noting that "Congress has set up an exclusive review procedure for decisions involving veterans benefits determinations, and the district court in this case correctly concluded that it lacked subject matter jurisdiction to hear [plaintiff's] challenge to the VA's decision to deny him benefits." Id. 60 F.3d at 1159-60. It decided that the district court did not acquire jurisdiction merely because plaintiff had dressed his challenge to the VA decision as a constitutional violation. In doing so, the Fifth Circuit joined the Second and Eighth Circuits in enforcing the exclusive jurisdiction of the CVA and the Court of Appeals for the Federal Circuit over claims challenging benefits determinations. See Sugrue v. Derwinski, 26 F.3d 8, 10 (2d Cir.1994)("[C]ourts do not acquire jurisdiction to hear challenges to benefits decisions merely because those challenges are cloaked in constitutional terms."), cert. denied sub nom. Sugrue v. Brown, 515 U.S. 1102, 115 S.Ct. 2245, 132 L.Ed.2d 254 (1995); Larrabee, by Jones v. Derwinski, 968 F.2d 1497 (2d Cir.1992); Hicks v. Veterans Administration, 961 F.2d 1367, 1370 (8th Cir.1992) ("These provisions amply evince Congress's intent to include all issues, even constitutional ones, necessary to a decision which affects benefits in this exclusive appellate review scheme."). None of these cases, however, involved plaintiffs who attempted to distinguish and separate a constitutional challenge to VA procedures for making benefits decisions from their underlying claim for benefits. At the same time, district court jurisdiction over facial challenges to acts of Congress survived the statutory revisions that established the CVA. In Disabled American Veterans v. United States Dept. of Veterans Affairs, 962 F.2d 136 (2d Cir.1992) ("D.A.V."), the Second Circuit affirmed a district court's decision that the revised § 211(a) (which was later renumbered § 511(a)) "does not deprive it of jurisdiction to hear facial challenges of legislation affecting veterans' benefits." Id. 962 F.2d at 140. Because plaintiffs in D.A.V. "challenge that constitutionality of a statutory classification drawn by Congress, the district court had jurisdiction to consider their claim." Id. 962 F.2d at 141. The Second Circuit did not consider whether district courts have jurisdiction to consider constitutional challenges to procedures developed by the VA. Nonetheless, the Second Circuit relied on Robison, in which the Supreme Court carved out only a narrow exception to a statute that attempted to remove all district court jurisdiction over VA decision making. That narrow exception allowed district courts to review the constitutionality of acts of Congress, but not of decisions of the VA secretary. Id. Plaintiffs here, however, do not challenge the constitutionality of an act of Congress.
 
 
 39
 Plaintiffs argue that the District Court should have decided that it had jurisdiction over their claims because they challenged the constitutionality of VA procedures and did not challenge a VA decision regarding individual benefits. They contend that district courts maintain jurisdiction over "constitutional attacks on the operation of the claims systems." Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 311 n. 3, 105 S.Ct. 3180, 3184 n. 3, 87 L.Ed.2d 220 (1985).[4] In pressing this claim before us, they rely most heavily on Marozsan v. United States, 852 F.2d 1469 (7th Cir.1988) (en banc). In Marozsan, the Seventh Circuit considered whether the district court had jurisdiction over a veteran's constitutional challenge of procedures used by the VA to deny him benefits. In particular, the veteran alleged that the VA employed an arbitrary quota system that violated his rights under the Due Process Clause.[5] The court considered the question of jurisdiction under the old § 211(a) and before the VJRA established its system for the review of VA decisions. It concluded that § 211(a) did not preclude the district court from hearing a veteran's challenge, "not of his individual claim determination, but of unconstitutional methods employed by the V.A. in arriving at that benefits decision." 852 F.2d at 1473 n. 10. In allowing district court jurisdiction, the court was particularly concerned that denial of jurisdiction would leave a veteran without "a judicial remedy against V.A. procedures that violate the Constitution. As a result Marozsan would have no judicial forum, and indeed--since the V.A. disclaims authority to consider constitutional claims--no forum at all to raise his due process claim." Id. 852 F.2d at 1472 (footnote omitted). The statute as it existed when Marozsan was commenced and decided closed the door to review of his claims; under those circumstances, district court jurisdiction was necessary to provide a forum for constitutional claims.[6]
 
 
 40
 Plaintiffs argue that Czerkies v. United States Dept. of Labor, 73 F.3d 1435 (7th Cir.1996) indicates that Marozsan remains good law despite the creation of the CVA and its power to consider constitutional claims. In Czerkies, the Seventh Circuit considered whether a district court had jurisdiction to review a Department of Labor decision regarding employee benefits. In doing so, the court explained the scope of its decision in Marozsan:
 
 
 41
 We have talked on at such length about Marozsan because we take seriously our duty to stand by our precedents--a duty the proper discharge of which requires, of course, that we get clear the scope of the precedent. Marozsan establishes that door-closing statutes do not shut off nonmonetary constitutional claims.
 
 
 42
 73 F.3d at 1140. Thus, plaintiff misreads the scope of Marozsan. In that case, the Seventh Circuit allowed district court review of constitutional claims only because the statute would otherwise close the door to any judicial review. Because the VJRA has provided plaintiffs with a forum for the judicial review of their constitutional claims, the concerns motivating Marozsan no longer apply to decisions made by the VA. See also McCulley v. United States Dept. of Veterans Affairs, 851 F.Supp. 1271, 1282 (E.D.Wis.1994)(stating that in light of 38 U.S.C. § 7292(c), "any attempt in Marozsan to grant district courts broad-based powers to hear non-facial constitutional challenges to VA benefits decisions appears outmoded"). Plaintiffs are mistaken when they argue that "without access to district court, veterans have no forum in which to challenge the constitutionality of VA procedures." Joint Appendix at 23.
 
 
 43
 In conclusion, we find that Congress intended to preclude district court jurisdiction over VA decisions relating to benefits claims, including decisions of constitutional issues. Plaintiffs here challenge the constitutionality of the procedures by which the Cleveland Regional Office of the VA and the BVA adjudicate claims for benefits. Whether these procedures cause unlawful or unconstitutional delays in the administration of veterans benefits are questions within the exclusive jurisdiction of the BVA, the CVA, and the Court of Appeals for the Federal Circuit. Thus, under 5 U.S.C. § 701(a)(1) as well as § 704 the APA waiver of sovereign immunity does not apply to plaintiffs' claims. The District Court properly dismissed plaintiffs' claims for lack of subject matter jurisdiction.
 
 III. Conclusion
 
 44
 For the foregoing reasons, we AFFIRM the decision of the District Court.
 
 
 
 [1]
 5 U.S.C. § 702 provides, in pertinent part, that:
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief thereupon denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.
 5 U.S.C. § 702.
 
 
 [2]
 38 U.S.C. § 7292(d)(1) provides as follows:
 The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. The court shall hold unlawful any regulation or interpretation thereof (other than determination as to a factual matter) that was relied upon in the decision of the Court of Veterans Appeals that the Court of Appeals for the Federal Circuit finds to be--
 (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
 (D) without observance of procedure required by law.
 38 U.S.C. § 7292(d)(1).
 
 
 [3]
 38 U.S.C. § 211(a) provided:
 [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans or their survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by any action in the nature of mandamus or otherwise.
 38 U.S.C. § 211(a) (quoted in Johnson v. Robison, 415 U.S. 361, 365 n. 5, 94 S.Ct. 1160, 1164 n. 5, 39 L.Ed.2d 389 (1974)).
 
 
 [4]
 In Walters, the Supreme Court interpreted Robison as holding that "district courts have jurisdiction to entertain constitutional attacks on the operation of the claims system." 473 U.S. at 311 n. 3, 105 S.Ct. at 3184 n. 3. Congress, however, subsequently established the CVA, effectively stripping district courts of any such jurisdiction
 
 
 [5]
 In contrast, plaintiffs here point to no specific procedures that violate their constitutional rights. Plaintiffs' bare allegations that VA procedures allow unreasonable delays appear closer to challenges to individual benefit decisions than a constitutional challenge to specific procedures. Plaintiffs have not alleged that even if these procedures operated more quickly, they still would violate their constitutional or statutory rights. The crux of their claim is simply that the system operates too slowly
 
 
 [6]
 After being remanded to the district court, Marozsan later made its way back to a panel of the Seventh Circuit. The Seventh Circuit did not, however, consider how the changes to § 511(a) or the establishment of the CVA affected district court jurisdiction and whether the changes in jurisdiction were retroactive. See Marozsan v. United States, 90 F.3d 1284 (7th Cir.1996)